WILLIAM G. WHITE v. WALLACE W. THOMAS and Others.[1]

January 29, 1904.

Nos. 13,759—(207).

**Taxes and Assessments—Priority.**

The lien of the city of St. Paul for local assessments is subordinate to the lien of the state for all taxes which have been or may be levied upon the same property under the general laws of the state, without reference to the time when the state lien accrued. White v. Knowlton, 84 Minn. 141, followed.

**Purchase from State.**

When the lien of the state becomes the subject of private ownership, the purchaser from the state takes it with the state's right of priority over all liens of the city for local assessment existing at the time of his purchase, but it is otherwise as to liens attaching after his purchase.

Application to the district court for Ramsey county by William G. White to have the title to certain land registered. Upon the report of the referee, summons was issued directed to Wallace W. Thomas and others, including the City of St. Paul, which answered claiming liens upon the premises by virtue of eight assessments for local improvements, certificates of sale under which were held by the city. Plaintiff's title was based upon certain tax sales. The case was tried before Kelly, J., who made findings of fact, and as conclusion of law found that plaintiff was entitled to registration subject to the eight liens of defendant city. From an order denying a motion for a new trial, and from a judgment entered pursuant to the findings, plaintiff appealed. Modified.

*William G. White,* pro se.

*James C. Michael, for* respondent.

START, C. J.

The appellant herein made application to the district court of the county of Ramsey to register under Laws 1901, p. 348 (c. 237) his title to a lot in the city of St. Paul. Such proceedings were had upon the

[1] Reported in 98 N. W. 101.

application that the court adjudged that the appellant was the owner in fee of the lot, subject to eight local assessment liens thereon in favor of the respondent, city of St. Paul, and that the title be so registered. The appellant appealed from an order denying his motion for a new trial, and also from the judgment.

The facts of this case are not disputed. The appellant's grantor became the owner in fee of the lot on October 12, 1898, by virtue of a tax judgment and a sale thereof on May 7, 1895, for the taxes thereon for the year 1893, and on April 1, 1903, he conveyed the lot to appellant. His grantor did not pay the taxes due on the lot for the year 1897, and a tax judgment was rendered therefor on March 21, 1899, and the lot sold by virtue of the judgment on May 2, 1899, to third parties, who on April 2, 1903, assigned their certificate to the appellant. Notice of the expiration of redemption from the sale was duly issued, which, with due proof of service thereof, was filed in the office of the county auditor on June 13, 1903. No redemption was made from this sale. The eight local assessment liens of the city in the aggregate amount to $169.03, but each attached on a separate date, as follows: The first on May 8, 1895; the second, October 14, 1895; the third, December 23, 1895; the fourth, December 26, 1896; the fifth, June 13, 1898; the sixth, January 3, 1899; the seventh, December 28, 1899, and the eighth, March 4, 1901.

1. It is the claim of the appellant that, under the provisions of the charter of the city of St. Paul (Sp. Laws 1887, pp. 348, 352, c. 7, subc. 7, §§ 34 and 47,) as construed by this court in the case of White v. Knowlton, 84 Minn. 141, 86 N. W. 755, the several liens of the city here in question for local assessments on the lot are all subordinate to the liens of the state for the taxes of 1893 and 1897, which were the basis respectively of the tax judgments and sales through which he claims title. Hence the liens of the city are cut off by his tax titles.

Counsel for the city, except as hereinafter stated, concedes that, if the construction given to the charter provisions by the court in White v. Knowlton is adhered to, the claim of the appellant logically follows. He, however, insists earnestly but respectfully that the decision in that case was wrong and should be overruled, for the reason that the charter provisions should be construed as providing that the lien of the

state for general taxes and the lien of the city for local assessments should be concurrent, and that a sale under either should not devest the other.

If this suggested construction of the charter is even a permissible one, it should, in the interest of substantial justice, be adopted by the court, and White v. Knowlton overruled. We have, therefore, in view of the great importance to the city of St. Paul of the question, carefully reconsidered it. The result, however, of a further investigation of the question is that White v. Knowlton was correctly decided, and, further, that the charter provision in question cannot be construed so as to make the lien of the state for general taxes and that of the city for local assessments concurrent, without resorting to strenuous judicial legislation, which is unthinkable. The case of White v. Knowlton was one solely between private parties.

The defendants claimed title to the lot, which was the subject-matter of the action, by virtue of a tax judgment and sale based upon the lien of the city of St. Paul for a local assessment which attached February 14, 1895, judgment therefor was rendered June 29, 1895, and the land sold by virtue thereof on November 4, 1895. The plaintiff claimed title to the land by virtue of a tax sale thereof by the state on May 7, 1895, which was based upon a judgment rendered March 21, 1895, for the general taxes for the year 1893, the lien of which attached May 1, 1893. The sole question presented by those facts for the decision of the court was as to which party held the paramount title. The defendants claimed they did, because their title was based upon a tax lien which was last in time, and therefore first in right. On the other hand, the plaintiff claimed that he held the paramount title by virtue of the special charter provisions to which we have referred. Neither party even suggested that the liens were concurrent, but each maintained that his own was the paramount lien.

The court held, construing the charter provisions, that the lien of the city for local assessments is subordinate to the lien of the state for all taxes which have been or may be levied upon the same property under the general laws of the state, without reference to the time when the state lien accrued. Was such construction of the charter the correct one? The provisions of the charter as to local assessments here material are the following:

"All assessments levied under the provisions of this chapter shall be a paramount lien upon the real estate on which the same may be imposed from the date of the warrant issued for the collection thereof * * * provided that nothing in this act contained shall be construed to affect or prejudice the lien of the state for all taxes which have been or may be levied upon said property under the general laws of the state."

It may be conceded that, if this proviso had been omitted, and the charter had simply provided in general terms that all local assessments should be a paramount lien on the land upon which they might be imposed, the lien for such assessments and the lien for general taxes would be concurrent, for the reason that the lien of the state for general taxes would in such case be an implied exception, within the rule that general terms of a statute may be subject to implied exceptions, founded in the rules of public policy and the maxims of natural justice, so as to avoid absurd and unjust consequences. Duckstad v. Board of Co. Commrs. of Polk Co., 69 Minn. 202, 71 N. W. 933; State v. Barge, 82 Minn. 256, 84 N. W. 911. See also Justice v. City, 101 Ind 326, and Bellocq v. City, 31 La. An. 471. But the fact remains that the legislature added an express condition in the form of the proviso, and it must be assumed that it was added for some purpose. That purpose was declared in language so clear as to leave no room for construction. It is "that nothing in this act contained shall be construed to affect or prejudice the lien of the state for all taxes which have been or may be levied upon said property under the general laws of the state." Here is an express prohibition against any construction which would make the lien of the state for taxes and that of the city for local assessments concurrent; for, manifestly, if a lien is made concurrent with another lien, the former is necessarily affected and prejudiced thereby.

In order to construe these charter provisions as urged by counsel for the city, we must in effect read out of them the proviso. This we have no right to do. It would be a lawless usurpation of legislative power to do so. We therefore must and do adhere to the rule laid down in White v. Knowlton.

2. It is further claimed by respondent that the lien of the state for general taxes, after it has become the subject of private ownership, is subordinate to the liens of the city for local assessments. If this means, as we understand that it does, that the purchaser of the lien of the state takes it subject to all then existing liens of the city for local assessments, the claim is clearly wrong. Such a rule would practically emasculate the law giving to the state a paramount lien, for the only way the state can realize on its lien is to sell, subject to redemption, the land upon which the lien rests, to private parties. Now, if the state could not on such a sale vest in the purchaser its priority of lien over then existing local assessments, it would be of little practical value to the state, for, in cases where the amount of the local assessment liens approximately equaled the value of the land on which they rested, no one would buy the state's claim. We hold, then, that a purchaser of the lien of the state takes it with its right of priority over all the then existing liens of the city for local assessments, without reference to the time when the state lien attached.

We also hold that, after the state lien has become the subject of private ownership, the interest of the purchaser in or his lien on the land is subject to all liens of the city for local assessments thereafter attaching. Such purchaser from the state, as to all future local assessments, holds his lien on or interest in the land precisely as he would hold a tract of school land purchased from the state, which in its hands was exempt from all taxes and assessments of every kind. In such a case the land would be exempt in his hands from all taxes or assessments attempted to be levied thereon while the state owned it, but as soon as it became private property it would be subject to all taxes and assessments thereafter levied thereon.

3. The last contention of the respondent is to the effect that when appellant's grantor became the owner of the lot on October 12, 1898, it was his duty to pay the taxes on the lot, and that his purchase of the lot at the tax sale, pursuant to the judgment for the taxes of 1897, was, as to the right of the city under the local assessments, a payment of the taxes, hence the appellant cannot rely upon such tax sale to defeat such right of the city. We are of the opinion that this question is settled adversely to the city by section 1599, G. S. 1894, which, so far as it is here relevant, reads as follows:

"If the owner purchase, the sale shall have the effect to pass to him (subject to redemption as herein provided) every right, title, and interest of any and every person, company, or corporation, free from any claim, lien, or incumbrance, except such right, title, interest, lien or incumbrance as the owner so purchasing may be legally or equitably bound to protect against such sale, or the taxes for which such sale was made."

The lien of the city for local assessments is clearly not within the exception, for the owner of the lot was not legally bound to pay the local assessments, nor equitably bound to protect the lien of the city therefor. Neither taxes nor assessments on real estate are a personal obligation. The exclusive remedy in this state for their collection is by a sale of the land on which they are levied.

4. The conclusion of the trial court that the appellant's title in fee is subject to the lien of the city for all the eight local assessments would be correct, except for the tax sale of the lot on May 2, 1899, for the general taxes of 1897, as they all accrued after the lien of the state on its taxes of 1893 became the subject of private ownership. The purchaser at the last sale acquired the lien of the state, which was, in his hands, paramount to the then existing liens for local assessments, but not as to such liens subsequently attaching to the lot. It follows that the appellant's title is subject to the liens of the city on the lot for local assessments attaching December 28, 1899, and March 4, 1901, respectively, but that it is not subject to the six liens of the city accruing prior to May 2, 1899, and, further, that the judgment appealed from must be modified accordingly.

Ordered that this cause be remanded, with direction to the district court to amend its conclusions of law and judgment so as to adjudge that the appellant has title in fee to the lot in question, subject only to the liens of the respondent city thereon attaching after May 2, 1899.