Iowa Securities Company, Appellee, v. Florence L. Barrett et al., Defendants; H. J. Pfeiffer, Appellant.

No. 40145.

April 14, 1930.

Merner & Merner and Pike, Sias & Zimmerman, for H. J. Pfeiffer, appellant.

J. D. Liffring and W. P. Jensen, for Iowa Securities Company, appellee.

John W. Gwynne, for Black Hawk County, defendant.

Grimm, J.—On December 22, 1926, the plaintiff filed in the Black Hawk County district court a petition in equity, asserting the ownership to certain real estate in Parkside Addition to the City of Waterloo, under a certain tax deed issued by the treasurer of Black Hawk County, March 4, 1925, which said deed was issued in pursuance to a tax sale for the unpaid general taxes for the years 1918, 1919, and 1920, the sale having been held on the 5th day of December, 1921. The defendant Pfeiffer answered, alleging, in substance, that he, on January 18, 1926, became the purchaser of the same property, describing it, at a

tax sale thereof, for unpaid installments of special paving and sewer assessments for the years 1921, 1922, 1923, and 1924; that, on May 26, 1926, the said defendant paid the delinquent subsequent general taxes of 1925 on said real estate. The defendant further answers:

"That, on and prior to October 22, 1917, and December 22, 1919, respectively, the said special paving and sewer assessments against said Lot No. One, for nonpayment of which said lot was sold to this defendant, and long prior to the date of the sale of said lot on December 5, 1921, to the plaintiff for the nonpayment of the ordinary taxes, became and were a lien upon said lot by the filing of the necessary papers and certificates of assessment in the offices of the auditor and treasurer of Black Hawk County, Iowa, as provided by law."

The defendant Pfeiffer then alleges that, by virtue of the issuance of a treasurer's certificate of purchase, on January 18, 1926, to him, and the payment by him of the subsequent taxes of 1925, he has a superior interest and lien in and upon said real estate, subject only to the owner's right of redemption, as provided by law. Later, the said Pfeiffer filed a cross-petition against his codefendants Black Hawk County, Iowa, and Madigan, county treasurer, alleging that he became the purchaser of the property described on January 18, 1926, for $55, and that, on May 26, 1926, he paid the treasurer of Black Hawk County the subsequent taxes for 1925, amounting to $10.85; also alleging that the plaintiff, the Iowa Securities Company, claims ownership by reason of the purchase of the property at general tax sale. The prayer of the cross-petition is as follows:

"Wherefore, the defendant, H. J. Pfeiffer, prays that, in the event the court finds that the said tax sale certificate of said Lot No. One, in Block No. Two, in Parkside Addition to Waterloo, Iowa, issued to this defendant by said Black Hawk County, Iowa, and Ed Madigan, county treasurer thereof, under date of January 18, 1926, is invalid and of no effect as against the plaintiff, that this defendant have judgment against said Black Hawk County, Iowa, and Ed Madigan, as treasurer thereof, for the amount of fifty-five dollars ($55.00), with interest thereon from January 10, 1926, and for the further sum of ten and

85/100 dollars, being the amount of delinquent subsequent general taxes paid by this defendant, with interest thereon from March 26, 1926, and that this defendant have such other and further relief as may be just and equitable in the premises.''

On January 7, 1929, the plaintiff filed a reply, containing, among other things, the allegation that plaintiff had tendered to the defendant and to the county auditor of Black Hawk County, Iowa, the amount necessary to redeem from the sale of said general taxes, 1925, and ''that due tender of said amount has been made, and further, that plaintiff now brings said amount into court, and makes tender thereof.''

Later, the defendant Pfeiffer filed an amendment to his answer, in the following words and figures:

''That the said tax deed to the plaintiff was also based upon and issued in pursuance of a tax sale of said premises for three unpaid installments of special paving and sewer taxes theretofore assessed and levied against the said premises and payable in the years 1918, 1919, and 1920.''

The parties filed an agreed statement of facts, from which it appears that the plaintiff holds a tax deed on a sale held December 5, 1921, for general taxes for the years 1918, 1919, and 1920, which tax deed was issued March 4, 1925; that this sale also included five of the seven paving assessments levied on the property in question on November 13, 1917, and three of the installments of sewer special assessment levied January 29, 1920. On the other hand, Pfeiffer, appellant, on January 18, 1926, bought four unpaid installments of paving and sewer taxes for the years 1921, 1922, 1923, and 1924, the paving assessments having been levied November 13, 1917, and the sewer assessment having been levied January 29, 1920. It appears that Pfeiffer paid the general taxes of 1925.

The court found for the plaintiff and against the defendants, expressly adjudging that, as against the claims of the plaintiff, the certain tax certificate issued by Black Hawk County, Iowa, to the defendant Pfeiffer ''is hereby canceled and declared to be of no effect.'' The court further found for the cross-petitioner, Pfeiffer, as against Black Hawk County, Iowa, rendering judgment in his favor in the amount of $65.05, being

the sum of $55 with interest from January 18, 1926. The defendant Pfeiffer only appeals.

I.  As having a bearing on the legislative intent with which the statutes necessarily interpreted in the decision of this case were passed, attention is called to the manner in which, by other sections of the statute, holders of special assessment liens are cared for.

Section 6039 of the Code of 1927, passed in 1924, found in Chapter 308 of the 1927 Code, pertaining to street improvements, sewers, and special assessments, reads as follows:

"At any such sale, where bonds have been issued in anticipation of such special taxes and interest, the city may be a purchaser, and be entitled to all the rights of purchasers at tax sales."

It will be seen by this section that, at any sale of property for the collection of special assessments levied for street improvements or sewers, in cases where bonds have been issued in anticipation of such special taxes and interest, the city may protect itself by becoming a purchaser, with all the rights of purchasers at tax sale.

Section 6041 of the Code of 1927, found in the same chapter, and passed in the same year, provides as follows:

"Any holder of any special assessment certificate against a lot or parcel of ground, or any holder of a bond payable in whole or in part out of a special assessment against any lot or parcel of ground, or any city or town within which such lot or parcel of ground is situated, which lot or parcel of ground has been sold for taxes, either general or special, shall be entitled to an assignment of any certificate of tax sale of said property for any general taxes or special taxes thereon, upon tender to the holder or to the county auditor of the amount to which the holder of the tax sale certificate would be entitled in case of redemption."

This statute gives material protection in connection with special assessments by enabling the holder of any special assessment certificate to secure an assignment of any certificate of tax sale for general taxes.  The forty-second general assembly by Chapter 154 of its proceedings amended said Section 6041

of the Code by inserting therein the words "or any city or town within which such lot or parcel of ground is situated," now appearing in said section as above quoted.

II. The main question in this case relates to the priority of a tax sale for general or ordinary taxes, and a tax deed issued thereon, over a special assessment levied prior to the tax sale, installments of which did not fall due until after the tax sale for general taxes.

Section 6008 of the Code of 1927, found in Chapter 308, pertaining to street improvements, sewers, and special assessments, contains the following:

"Thereupon all special taxes for the cost thereof, or any part of said cost, which are to be assessed and levied against real property, or any railway or street railway, together with all interest and penalties on all of said assessments, shall become and remain a lien on such property from the date of the filing of said papers with the county auditor until paid, *and such liens shall have precedence over all other liens except ordinary taxes,* and shall not be divested by any judicial sale." (Quoter's italics.)

Section 7202 of the 1927 Code, found in Chapter 346, pertaining to collection of taxes, reads as follows:

"Taxes upon real estate shall be a lien thereon against all persons except the state."

Section 7286 of the 1927 Code, found in Chapter 349, dealing with tax deeds, contains the following language, pertaining to a tax deed on ordinary taxes:

"[said deed] shall vest in the purchaser all the right, title, interest, and estate of the former owner in and to the land conveyed, and all the right, title, interest, and claim of the state and county thereto."

It will be noted that Section 6008, providing a lien for special assessments, definitely states in plain language that such lien shall have precedence over all other liens *except ordinary taxes.* It is, however, the claim of the appellant that by this language ordinary taxes are not given a superior lien, but only an equal lien with special assessments. In this we cannot concur.

Had the legislature intended to place them upon a par, we think it would have used some additional words to so indicate, and that the only fair and reasonable interpretation to be put upon the words "except ordinary taxes" is that the lien of ordinary taxes is superior to that of the lien based upon special assessments. This is particularly true when the section is read in connection with Section 7202, which definitely provides that taxes (general taxes) upon real estate shall be a lien thereon against all persons except the state.

In this connection it is significant that taxes become liens by virtue of statute only. *Bibbins v. Clark & Co.*, 90 Iowa 230, and cases cited. Likewise, it is to be noted that these liens, which are created by statute, are not to be enlarged by judicial construction. *Bibbins v. Clark & Co.*, 90 Iowa 230, and cases cited.

In *Harrington v. Valley Sav. Bank*, 119 Iowa 312, certain property was sold for general taxes in December, 1896, followed by a tax deed in November of 1900. In 1895, street improvements were ordered, the cost of which was assessed on the same property in September, 1897. The statute as it existed at that time provided, as now, that the assessment should be a lien from the filing of the papers with the county auditor, with preference over all other liens *except ordinary taxes*. In the *Harrington* case, the lien of the special assessment was created by the ordering of the street improvement and certification thereof to the county auditor prior to the tax sale, although the special assessment was not levied until some months after the sale. The court held that the tax deed, based upon the general taxes, cut out the lien of the special assessment. The opinion states:

"The sale for the ordinary taxes transferred to the purchaser the lien provided by the statute."

In *Montgomery v. City of Des Moines*, 190 Iowa 705, a suit to quiet title and to remove the cloud of a purported lien of a special assessment, the plaintiff was the holder of a treasurer's deed. The contention was that it conveyed to him the title, free of all liens except liens for ordinary taxes, and that his title was superior to the special assessment made after the tax sale and before the issuance of the tax deed. The lower court held for the plaintiff. The court said:

"The point thus in issue appears to have been directly

ruled on by us in the case of *Harrington v. Valley Sav. Bank,* 119 Iowa 312. * * * It is sufficient for us to say that the holding thus assailed is of such a nature as to have become a rule of property. To overrule such a case involves the defeat of rights that have been vested in reliance upon the previous holding.''

This court affirmed the lower court.

In *Lucas v. Purdy,* 142 Iowa 359, in an action in which the sole question presented was whether a valid tax deed of land belonging to a husband, executed by the county treasurer in pursuance of the statutes of the state, divests the wife's inchoate right of dower therein, the following language is found:

''All property is held subject to the payment of taxes which are imposed as an incident of sovereignty. *City of Davenport v. Railway,* 38 Iowa 633; Cooley, Const. Lim., 479. * * * Such is the purport of the decisions of this court declaring that the tax title is not derivative, but original, is not limited to passing the title of him in whose name the land is taxed, but divests all interests in the land, and vests in the grantee an independent and paramount title. Thus it was said in *Petersborough Sav. Bank v. Des Moines Sav. Bank,* 110 Iowa 519, that 'a tax title is not a derivative but a new title, in the nature of an independent grant from the sovereign.' Similar expressions appear in *McQuity v. Doudna,* 101 Iowa 144, and *Bellows v. Litchfield,* 83 Iowa 43. In *Willcuts v. Rollins,* 85 Iowa 247, the court observed that: 'A tax title is not derivative. If valid, it is a breaking up of all other titles, and is antagonistic to all other claims to the land.' * * * the tax deed 'operates to destroy all prior interest, and vests the purchaser with a new and independent title.' ''

The authority also quotes with approval the following from *Hefner v. Northwestern Life Ins. Co.,* 123 U. S. 747:

''* * * if the tax deed is valid, then from the time of its delivery it clothes the purchaser, not merely with the title of the person who had been assessed for the taxes and had neglected to pay them, but with a new and complete title in the land, under an independent grant from the sovereign authority, which bars or extinguishes all prior titles and incumbrances of private persons and all equities arising out of them.''

Further, the court says:

"In an ordinary case, it matters not how many different interests may be connected with the title, what may be the particular interest of the party in whose name the property may be listed for taxation, it may be a mere equitable right; if the land be regularly sold for taxes, the property, accompanied with a legal title, goes to the purchaser, no matter how many estates, legal or equitable, may be connected with it."

In *White v. Thomas*, 91 Minn. 395 (98 N. W. 101), that court used the following language:

"It is further claimed by respondent that the lien of the state for general taxes, after it has become the subject of private ownership, is subordinate to the liens of the city for local assessments. If this means, as we understand that it does, that the purchaser of the lien of the state takes it subject to all then existing liens of the city for local assessments, the claim is clearly wrong. Such a rule would practically emasculate the law giving to the state a paramount lien; for the only way the state can realize on its lien is to sell, subject to redemption, the land upon which the lien rests, to private parties. Now, if the state could not, on such a sale, vest in the purchaser its priority of lien over then existing local assessments, it would be of little practical value to the state; for, in cases where the amount of the local assessment liens approximately equalled the value of the land on which they rested, no one would buy the state's claim. We hold, then, that a purchaser of the lien of the state takes it with its right of priority over all the then existing liens of the city for local assessments, without reference to the time when the state lien attached."

See, also, the following authorities: *City of Ballard v. Ross*, 38 Wash. 209 (80 Pac. 439); *In re Dancy Drainage Dist.*, 199 Wis. 85 (225 N. W. 873).

We concur in the finding of the lower court. The case must be, and is,—*Affirmed.*

MORLING, C. J., and EVANS, FAVILLE, and KINDIG, JJ., concur.