STATE, Appellant, v. DAY COUNTY, Respondent.

(266 N. W. 726.)

(File No. 7929. Opinion filed April 24, 1936.)

*Walter Conway,* Attorney General, and *Tom Eastman,* Assistant Attorney General, for the State.

*Lewis W. Bicknell,* State's Attorney, of Webster, for Respondent.

POLLEY, P. J. This action was brought to determine the superiority of the liens of the respective parties against a tract of land in Day county.

The facts are so fully set out in the findings made by the court that we do not consider it advisable to set out the pleadings other than the relief asked for by the respective parties.

In its prayer for relief the plaintiff asks: "That the defendant be required to set forth its purported claim or lien and that the court, by its proper decree, find and adjudge said claim or lien to be inferior to plaintiff's title in and to said lands, and that title thereto may be quieted in plaintiff, State of South Dakota."

In its answer defendant asks: " * * * that the defendant's lien upon said lands be adjudged to be in all things superior to the rights of plaintiff; that the plaintiff be held and adjudged to hold any title it may claim to said lands subject to the lien of this defendant and that the defendant have such other and further relief as may seem just and equitable."

No record has been brought up to this court by the appellant other than the pleadings, findings of fact, conclusions of law, and judgment; therefore, the findings of fact as made by the trial court must be accepted by this court as an absolute verity, and no consideration can be given to appellant's discussion of the exhibits or the sufficiency of the evidence. The trial court made the following findings of fact:

"That on the 11th day of May, 1917, a drainage petition was filed in the office of the County Auditor of Day county, South Dakota, praying for the establishment of a drainage ditch in Waubay and Koscuisko townships in said county, and that upon said petition various proceedings were thereafter had by the Board of County Commissioners of said county whereby there was established and caused to be constructed a drainage ditch known and thereafter designated as the 'Block Drainage Ditch.' That a part of the lands embraced within and to be affected by said drainage project was the said lots three (sometimes described as NE¼ of NW¼) and four (sometimes described as NW¼ of NW¼) and south-half of northwest quarter of section four, township 123, Range 53, then owned by one Anton Block, who was one of the signers of the drainage petition.

"That thereafter said Block Drainage Ditch was constructed, proceedings were had to determine the relative benefits, the cost of construction was advanced from the general fund of Day county, South Dakota, and all items of cost of construction were paid, and thereafter and on or about the 12th day of January, 1922, after all the owners of property involved had made an agreement in accordance with the provisions of Revised Code Section 8471, and with the provisions of Section 14, Chapter 98, Laws of 1905, as amended, whereby they accepted the assessment as true and correct, agreed to pay the same and waived any defect or objection to the proceedings in levying said assessment, establishing said ditch, or determining the amount of the benefits, an assessment roll was made up and filed in the office of the County Treasurer of Day county, South Dakota.

"The Court further finds that on December 12, 1921, the Board of County Commissioners of Day county caused a Notice of Assessment to be given, setting out the contents of a proposed assessment roll, and giving notice that a copy of such assessment would be filed with the County Treasurer on January 12, 1922. This Notice of Assessment was posted in three public places in Day county on December 22, 1921, which was twenty-one days prior to the filing thereof in the office of the treasurer, and a Resolution approving said assessment roll was passed by the County Commissioners on the 9th of January, 1922, the assessment roll

referred to having prior to that date been duly accepted in writing by each and every owner of a tract of land affected thereby together with a written engagement by said owners that all defects in the proceedings leading to the spreading of said assessment were severally waived.

"The Court further finds as a matter of fact that all of the various steps required to be taken and notices required to be given from the commencement of the proceedings, down to the filing of the assessment roll were taken timely and did in fact substantially comply with the requirements of law which matters were conceded by both counsel at the time of argument of the case. The Court has noted in Finding No. III certain irregularities as to date, time, and notice in connection with the filing of the assessment roll."

On or about the 1st day of December, 1920, the then owner of the land involved in this action made a Rural Credit loan of $2,700 thereon and gave the state a mortgage to secure the payment thereof. Default was made in the payment of this loan, and during the year 1928 the mortgage was foreclosed and a sheriff's deed was issued to the state on the 17th day of June, 1929.

The court further found: "* * * that the amount of the assessment levied against this land and which the then owner of the land agreed to pay for an assessment ditch already constructed at the time of making the agreement was the sum of $1989.80; that no portion or installment of said assessment has ever been paid, by the owner of the land, or the plaintiff, and the same as a matter of record stands as an unpaid assessment against the real property above described, and the whole of said sum was advanced and paid by Day county, South Dakota, from public funds."

From these facts the court made the following conclusions of law:

"That the proceedings to establish the so-called 'Block Ditch' described in the pleadings and evidence in this case were, except as to the filing of the assessment roll, in all respects lawfully and regularly conducted.

"That the proceedings in the filing and spreading of the assessment roll, while irregular did not substantially affect the rights of any parties interested in said drainage proceedings, or entitled

to notice thereof, and that said assessment roll, as filed, was filed pursuant to the agreement in writing of every person required to accept the same by law, and the defects and irregularities in the filing of the same, if any, ought to be validated by decree of Court pursuant to provisions of Section 29, Chapter 98, Laws of 1905, now Section 8488 South Dakota Revised Code.

"That the plaintiff is the owner of the real property above described.

"That the defendant Day county has a valid lien for drainage assessment upon said land in the sum of $1989.80 and interest after January 12, 1922, and that said lien is wholly unpaid.

"That under the law of this State the rights of the plaintiff arising from a mortgage given from Rural Credit funds and of the defendant by reason of an assessment, which can only be collected in the manner provided by law for the collection of taxes, are co-ordinate, and that the lien held by the defendant is not inferior to the rights and title of the plaintiff in and to said lands."

Judgment dismissing plaintiff's action was entered accordingly.

■ ■ Appellant seeks to question the validity of the assessment, but in view of the findings of the trial court and that this is an appeal from the judgment only we think that point cannot be urged. Section 8464, R. C. 1919 provides that: "From the time of filing such certified copy of assessment in the treasurer's office, the same shall be due and payable and shall be valid and perpetual liens upon the respective tracts so assessed against all persons or governments except the state and the United States and, if not paid within ten days. * * *" Note that this statute does not in express terms make the liens superior to all other liens, but makes them "perpetual" liens, which means that such liens shall continue in force until they are paid or extinguished in some other legal manner. Under the provisions of subdivision 3 of section 10159, if the Rural Credits Board is not actually required to pay such liens, it is at least empowered to do so. Hughes County v. Henry, 48 S. D. 98, 202 N. W. 286. The language of this subdivision is as follows: "The board may loan money on, and take as security for the same, farm lands subject to liens or assessments for drainage, reclamation or irrigation purposes, payable in installments, not due at the time of making such loan, and the mortgage taken to secure

the loan shall, notwithstanding such liens or assessments, be deemed a first mortgage within the meaning of this chapter; provided, that the amount of such liens or assessments shall be considered by the board in determining the amount to be loaned on such farm lands." And in making the loan involved in this case the board is presumed to have taken the drainage assessment into consideration in arriving at the amount of the loan.

This subdivision should be read in connection with subdivision 5 of the same section (10159), which would then read: "No such loan shall exceed seventy per cent of the value of the land, as ascertained and fixed by the board, *less the amount of liens or assessments for drainage.*" This would enable the board to pay such liens without investing more than 70 per cent of the value of the land in the loan. Under the provisions of these two subdivisions of section 10159, "the lien held by the defendant is not inferior to the rights and title of the plaintiff in and to said lands," and the trial court was warranted in so holding.

The judgment appealed from is affirmed.

CAMPBELL, WARREN, and RUDOLPH, JJ., concur.

ROBERTS, J., not sitting.