ALBERT H. POLENZ, APPELLEE, V. CITY OF RAVENNA ET AL., APPELLANTS.

18 N. W. 2d 510

FILED APRIL 20, 1945. No. 31893.

*O. A. Drake* and *H. L. Blackledge*, for appellants.

*C. L. Mingus, contra.*

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

SIMMONS, C. J.

Plaintiff is the owner of two city lots purchased at a tax foreclosure sale. Defendants are the City of Ravenna and the County of Buffalo, and certain of their officers. Plaintiff brought this action seeking a decree that certain paving assessments were not a lien against the real property involved, and asking that defendants be enjoined from collecting or attempting to collect the same. The trial court so

decreed. Defendants appeal. We affirm the judgment of the trial court.

With one exception to be noted hereinafter, all the facts are stipulated. In 1921 and 1922 the city of Ravenna created paving districts, improved the property and levied special assessments upon the property involved in the amount of $948.70. The amounts became a lien against said premises from the date of the levy in accordance with the provisions of section 4283, Comp. St. 1922, now section 17-514, R. S. 1943. One-twentieth of the total levy became due annually and, if not paid when due, delinquent. The city did not certify the total of said assessments to the county clerk, but rather, as annual installments became delinquent, they were certified to the county clerk, and thereafter appeared upon the tax records in the office of the county treasurer.

Thereafter, general taxes and special assessments upon the property involved became delinquent, and in 1937 the county became the purchaser of a tax sale certificate covering both the general taxes and special assessments. In September, 1939, the county brought an action to foreclose the same. The action, when brought, involved such general taxes and special assessments as were then delinquent and unpaid. When the action was determined, the decree included general taxes in the amount of $572.18, and special assessments in the amount of $1,027.50. The property was sold to satisfy the amount of said decree and costs. Plaintiff bid therefor the amount of $200, purchased the property at that price and received a sheriff's deed.

At the date of the decree, the last three of the special assessments were not delinquent and had not then been certified to the county authorities. They have since been so certified, now appear on the tax records as apparent liens, and the city and the county are demanding payment.

The dispute in the evidence is in this: The county and city offered evidence to show that at the sale it was orally announced the property was being sold subject to the three unpaid and not delinquent assessments. The plaintiff offered evidence denying that such an announcement was made.

The question here is: Are these three installments liens upon the property after title has passed to the purchaser at the foreclosure sale?

The defendants' argument is that these three assessments were not included in the foreclosure proceedings and decree, and were not ordered canceled of record in the confirmation of the sale; and that the plaintiff purchased with the record notice of that fact and with the actual notice given at the time of the sale.

The general taxes involved in this action are those for the years 1931 to and including the first half of 1940. The legislative acts during this period provided: "Taxes on all real property shall be a first lien thereon * * * ." Comp. St. 1929, sec. 77-203; "Taxes on real property shall be a first lien thereon * * * ." Laws 1933, ch. 134, sec. 1, p. 514; Laws 1935, ch. 151, sec. 1, p. 558; Laws 1937, ch. 167, sec. 2, p. 637; Laws 1939, ch. 98, sec. 2, p. 422; Laws 1941, ch. 157, sec. 2, p. 608. The present provision is: "All general real property taxes * * * shall be a first lien * * * ." R. S. 1943, sec. 77-203.

It further was provided: "All general taxes due the state and its governmental subdivisions shall be a first lien on the real estate on which levied, and takes priority over all other encumbrances and liens thereon." Comp. St. 1929, sec. 77-206. At present the provision is: "The first lien upon real estate under section 77-203 shall take priority over all other encumbrances and liens thereon." R. S. 1943, sec. 77-208.

The special assessments involved in the foreclosure are for the years 1927, 1928, and 1931 to and including 1939. They were levied and became a lien in 1921 and 1922, the exact date not being shown.

The applicable statute as of 1913 was: "All special assessments, regularly assessed and levied by any county or municipality, duly authorized, shall be a lien on the real estate on which assessed, as provided by the statute authorizing the same, but shall be subject to the general taxes mentioned in the last preceding section." R. S. 1913, sec. 6306. The legislature in 1921 provided: "All special assessments,

regularly assessed and levied as provided by law, shall be a lien on the real estate on which assessed, but shall be subject to the general taxes mentioned in the last preceding section." Laws 1921, ch. 133, art. II, sec. 7, p. 548.

The above provision became section 5826, Comp. St. 1922, and section 77-207, Comp. St. 1929. This provision now is: "All special assessments, regularly assessed and levied as provided by law, shall be a lien on the real estate on which assessed, and shall take priority over all other encumbrances and liens thereon except the first lien of general taxes under section 77-203." R. S. 1943, sec. 77-209.

It thus appears that the legislature has at all times involved herein consistently declared that all general real property taxes are a first lien on the real estate; that they take priority over all other encumbrances and liens; and that all special assessments are a lien, subject to the lien of general taxes, and superior to all other encumbrances and liens.

In 1903 the legislature passed a comprehensive act providing for a system of public revenue. Section 231, ch. 73, p. 475, Laws 1903, gave the several counties a lien for taxes, authorized their foreclosure in the same manner as though the lien were a mortgage, and authorized the sale of the property to satisfy the lien, and a delivery of a deed to the purchaser. See R. S. 1913, sec. 6559. The legislature in 1919 amended this act to provide, among other things, that "The delivery of such deed shall pass title to the purchaser free and clear of all liens of every nature whatsoever, and the interest of all persons over whom the court had jurisdiction." Laws 1919, ch. 59, sec. 1, p. 165. This section then became section 6087, Comp. St. 1922, and later section 77-2039, Comp. St. 1929. Section 77-2039, *supra*, was amended in 1935 (Laws 1935, ch. 162, sec. 1, p. 590), again in 1937 (Laws 1937, ch. 167, sec. 14, p. 644), again in 1939 (Laws 1939, ch. 98, sec. 14, p. 430), and again in 1941 (Laws 1941, ch. 157, sec. 14, p. 615). The language above quoted was retained throughout these amendments. In 1943, section 77-2039, as amended, and other sections were

repealed and a new act passed. Laws 1943, ch. 176, p. 614. Section 14 of this act, on page 618, provided: "The delivery of the sheriff's deed shall pass title to the purchaser, free and clear of all liens of every nature whatsoever and the interest or interests of all persons over whom the court had jurisdiction." This provision now is found in section 77-1914, R. S. 1943.

Section 77-2040, Comp. St. 1929, as amended, had to do with a separate foreclosure procedure. It cannot be held that the legislature intended that a purchaser in an action brought under section 77-2039, *supra,* would receive a better title than a purchaser who buys at a sale brought under section 77-2040, *supra.*

We think it clear from the provisions of the statutes that general taxes are a first lien, special assessments are a lien inferior thereto; that where property is sold at a tax foreclosure to satisfy the lien of general taxes, it cannot be sold subject to the lien of special assessments; and that, when title passes to a purchaser by such a sale, it is free and clear of all such liens.

In the very nature of things a sale under a foreclosure of a first lien cannot be made subject to any other lien, for to do so would be to make the junior lien a senior lien. It would destroy the very purpose of the legislative provisions making general taxes a first lien. They are made a first lien in order that the funds which support the general functions of government may be secured. The lien for general taxes can only be realized by the sale of the property. If the special assessments remain a lien against the land, after sale to satisfy the paramount lien, then it is obvious that the sale value of the property is reduced by the amount of the junior lien. Such a result was not intended. If the special assessments remain a lien after title passes under the foreclosure proceedings, the result would be that the junior lien could then come forward and destroy the title based on the superior lien. Such a result would nullify the very purpose of the tax foreclosure laws.

To make the first lien of general taxes fully effective, the

title must pass, as the legislature declares it shall pass, free and clear of all other liens. Anything short of that would nullify the purposes of the law and the foreclosure proceedings.

This court has held that "The title conveyed under a tax sale is not derivative, but a new title, and the purchaser, if his deed is valid, takes free from any incumbrance, claims or equities connected with the prior title." *Topliff v. Richardson,* 76 Neb. 114, 107 N. W. 114. See, also, *Coffin v. Old Line Life Ins. Co.,* 138 Neb. 857, 295 N. W. 884.

The rule is stated: "It is competent for the legislature to make the lien of taxes on real estate paramount to all other existing liens and encumbrances; and when this is done, and particularly when the tax sale is considered as creating a new and independent title, it is generally held that the tax title destroys and extinguishes all existing liens, charges, and encumbrances, and that the purchaser may acquire a clear and unencumbered title, without regard to their number and variety." 61 C. J., sec. 1831, p. 1310. See, also, 51 Am. Jur., sec. 1019, p. 891, sec. 1074, p. 934, and sec. 1079, p. 938.

Other courts have considered this same problem and have come to a like conclusion. See *White v. Thomas,* 91 Minn. 395, 98 N. W. 101; *Iowa Securities Co. v. Barrett,* 210 Ia. 53, 230 N. W. 528; *Western Securities Co. v. Black Hawk Nat. Bank,* 211 Ia. 1304, 231 N. W. 317; *Warren v. Blackman,* 62 S. D. 26, 250 N. W. 681; *Pennsylvania Co. v. City of Tacoma,* 36 Wash. 656, 79 Pac. 306; *Western Beverage Co. v. Hansen,* 98 Utah 332, 96 Pac. 2d 1105.

The judgment of the district court is affirmed.

AFFIRMED.