INA GROUP, LLC, A NEBRASKA LIMITED LIABILITY COMPANY, APPELLANT AND CROSS-APPELLEE, V. JOHN H. YOUNG AND MICKEY J. YOUNG, HUSBAND AND WIFE, APPELLEES, AND CITY OF OMAHA, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE AND CROSS-APPELLANT.

INA GROUP, LLC, A NEBRASKA LIMITED LIABILITY COMPANY, APPELLANT AND CROSS-APPELLEE, V. FRANCIS LEONARD, SR., AND JOHN DOE AND MARY DOE, REAL NAMES UNKNOWN, APPELLEES, AND CITY OF OMAHA, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE AND CROSS-APPELLANT.

INA GROUP, LLC, A NEBRASKA LIMITED LIABILITY COMPANY, APPELLANT AND CROSS-APPELLEE, V. ROBERTO CASTILLO, APPELLEE, AND CITY OF OMAHA, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE AND CROSS-APPELLANT.

INA GROUP, LLC, A NEBRASKA LIMITED LIABILITY COMPANY, FORMERLY KNOWN AS IRONWOOD NE, LLC, APPELLANT AND CROSS-APPELLEE, V. CARL H. BEJERIS AND JOHN DOE AND MARY DOE, REAL NAMES UNKNOWN, APPELLEES, AND CITY OF OMAHA, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE AND CROSS-APPELLANT.

INA GROUP, LLC, A NEBRASKA LIMITED LIABILITY COMPANY, APPELLANT AND CROSS-APPELLEE, V. MARIA MATA ET AL., APPELLEES, AND CITY OF OMAHA, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE AND CROSS-APPELLANT.

INA GROUP, LLC, A NEBRASKA LIMITED LIABILITY COMPANY, APPELLANT AND CROSS-APPELLEE, V. JOSEPH J. NEBBIA AND JOHN DOE AND MARY DOE, REAL NAMES UNKNOWN, APPELLEES, AND CITY OF OMAHA, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE AND CROSS-APPELLANT.

INA GROUP, LLC, A NEBRASKA LIMITED LIABILITY COMPANY, APPELLANT AND CROSS-APPELLEE, V. CHAD T. RAINS ET AL., APPELLEES, AND CITY OF OMAHA, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE AND CROSS-APPELLANT.

INA GROUP, LLC, A NEBRASKA LIMITED LIABILITY COMPANY, APPELLANT AND CROSS-APPELLEE, V. BRIAN KEITH DACUS AND JOHN DOE AND MARY DOE, REAL NAMES UNKNOWN, APPELLEES, AND CITY OF OMAHA, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE AND CROSS-APPELLANT.

716 N.W.2d 733

Filed July 7, 2006. Nos. S-05-231, S-05-268, S-05-338, S-05-348, S-05-414, S-05-415, S-05-421, S-05-650.

Shanna L. Cole, of Pierson, Fitchett, Hunzeker, Blake & Katt, for appellant.

Rosemarie B. Lee, Assistant Omaha City Attorney, for appellee City of Omaha.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

The question presented in these appeals is whether, in a foreclosure on a tax sale certificate, liens for municipal special assessments are extinguished if the proceeds of the sale are insufficient to satisfy all the tax liens upon the property.

## STATUTORY FRAMEWORK

While the facts of these consolidated cases are not complicated, they arise in the context of a rather complicated statutory scheme. Before discussing the specific facts of the instant cases, it will be helpful to review the statutory framework, Neb. Rev. Stat. ch. 77, arts. 2, 18, and 19 (Reissue 2003, Cum. Supp. 2004, & Supp. 2005).

General ad valorem taxes levied on real property are due and payable on December 31 of each year, following the date they are levied, and beginning on December 31 the taxes are a first lien on the property taxed. See §§ 77-203 and 77-208. Special

assessments levied by cities, villages, and special improvement districts are also a lien on the real estate, second only to the first lien of general taxes. See §§ 77-209 and 77-1917.01. All these liens are extinguished after 15 years. See § 77-1862.

A county, or a governmental subdivision with a special assessment lien, can petition the district court for a decree of foreclosure on its lien, generally in the same manner as is provided for foreclosure on a real estate mortgage. See §§ 77-1901 and 77-1917.01. See, generally, *County of Seward v. Andelt*, 251 Neb. 713, 559 N.W.2d 465 (1997); *Brown v. Glebe*, 213 Neb. 318, 328 N.W.2d 786 (1983); *KLH Retirement Planning v. Cejka*, 3 Neb. App. 687, 530 N.W.2d 279 (1995). Such a sale cannot be confirmed until 2 years after the sheriff's sale in the foreclosure proceeding. See § 77-1903. However, that "lien method" was not followed in these cases.

Instead, these cases involve the "certificate method" for handling delinquent real estate taxes. Starting March 1 in the year following the levy of delinquent taxes or special assessments, the property is subject to sale. See §§ 77-1801 and 77-1858. The county treasurer publishes a list of all real property subject to sale, with a notice that the property will be sold on a given date, and on that date, the property is offered for sale to purchasers willing to pay the taxes and charges. See §§ 77-1802 to 77-1808. If there are no bidders, then the property can be purchased by the county board or another governmental subdivision. See §§ 77-1809 to 77-1811. If the property remains unsold, then the treasurer can sell the property at a private sale. See § 77-1814.

This is called the "certificate method" because the purchaser of the property receives a certificate, commonly known as a "tax certificate" or "tax sale certificate," describing the property, amount paid by the purchaser, and date that the purchaser will be entitled to a deed. See §§ 77-1818 and 77-1819. If the property is purchased by the county board, the certificate remains in the custody of the county treasurer, who can assign the certificate to any purchaser willing to pay the amount stated on the face of the certificate (plus interest), including another governmental subdivision. See §§ 77-1809 and 77-1810.

The purchaser of the certificate has a perpetual lien for the tax on the real property, and if the purchaser pays any delinquent

taxes subsequently assessed on the property, that amount is added to the lien. See §§ 77-1818 and 77-1819. Certificates can be assigned by endorsement, and the assignee steps into the shoes of the purchaser. See § 77-1822. The owner of the property can redeem the property before delivery of a deed by paying the treasurer the amount shown on the certificate, and all subsequent taxes, along with the interest specified by Neb. Rev. Stat. § 45-104.01 (Reissue 2004), which is currently 14 percent.

There are two courses of action by which the purchaser of a tax certificate may proceed—the purchaser can either wait and obtain a deed of conveyance for the property or obtain an order of foreclosure and compel the sale of the property. The first course of action, obtaining a deed, requires the purchaser to wait 3 years from the date of sale of the property. At any time within 6 months after the 3-year period expires, the treasurer can, upon request, issue a deed of conveyance to the purchaser. See § 77-1837. If the certificate owner waits longer than 3 years 6 months from the sale, the certificate ceases to be valid and the lien of taxes for which the property was sold is discharged. See § 77-1856. But that procedure was not followed in these cases.

Instead, the purchaser in these cases followed the other course of action available to the purchaser of a tax certificate—judicial foreclosure on the certificate. When a tax certificate or tax deed has been issued, the purchaser may surrender the certificate or deed in the district court, within 6 months following the expiration of 3 years from the sale, and proceed as a plaintiff in the district court for a decree of foreclosure on the tax lien represented by the certificate or deed. See § 77-1902. The district court determines the taxes, special assessments, and other liens to which the property is subject, and costs including an attorney fee of 10 percent of the amount due. See § 77-1909. Twenty days following the district court's decree of foreclosure, the plaintiff is entitled to an order of sale, which must be issued within 10 years following the date of the decree. See § 77-1911. After 10 years, no order of sale can issue, the decree is deemed satisfied, and no action shall lie to enforce the tax or special assessment liens included in the decree. See *id*.

When the order of sale issues, the sheriff sells the property in generally the same manner as is provided for a sale on execution

and pays the proceeds to the clerk of the district court. See § 77-1912. Governmental subdivisions may purchase the property. See *id.* Unlike foreclosure under the "lien method," a sale resulting from foreclosure under the "certificate method" can be confirmed immediately after the sheriff's sale. See § 77-1903. Any person entitled to redeem the property can do so before final confirmation of the sale. See § 77-1917.

Regardless of whether the foreclosure was had on a tax lien or tax certificate, if the proceedings were correct and the subsequent taxes have been paid, the district court may enter an order confirming the sale, directing the disposition of the proceeds of the sale, and directing the sheriff to deliver a sheriff's deed to the purchaser for any property not redeemed. See § 77-1913. Even if a private purchaser at a sheriff's sale fails to pay subsequent taxes levied and assessed against the property, the interested governmental subdivision may have a tax certificate issued for the subsequent taxes, and the sale can still be confirmed. See *id.* Upon confirmation of the sale, the treasurer cancels the taxes for the years for which the property was sold, and the sheriff's deed passes title to the purchaser "free and clear of all liens of every nature whatsoever and the interest or interests of all persons over whom the court had jurisdiction." See § 77-1914.

The proceeds of the sale are first used to pay the costs. When the plaintiff is a private person, firm, or corporation, as much as is necessary of the remaining balance is paid to the plaintiff. If the plaintiff is a governmental subdivision, the balance is paid to the treasurer for distribution to the various entitled governmental subdivisions. See § 77-1915. If there is a surplus after satisfying the costs and taxes, the excess is applied in the manner provided by law for disposing of a surplus in the foreclosure of a mortgage on real property. If the proceeds are insufficient to pay the costs and taxes and the plaintiff is a governmental subdivision, then the amount remaining is prorated among the various interested governmental subdivisions. See § 77-1916. The issue presented here is what happens if the proceeds are insufficient, but the plaintiff is not a governmental subdivision.

## FACTUAL BACKGROUND

These eight consolidated cases began with foreclosure complaints filed in the district court by INA Group, LLC (INA),

against various property owners; the City of Omaha, Nebraska (City); and, in two cases, the State of Nebraska. In each complaint, INA alleged that it was the assignee of a tax certificate for a parcel of real property in the City. Each of the complaints alleged that there was a sum of money due to INA on the tax liens represented by the certificates, that INA had spent $100 on a title search for the property, and that INA was entitled to an attorney fees award of 10 percent of the amount due to be taxed. See § 77-1909.

Most pertinently, each of the complaints alleged that the City claimed an interest in the properties by virtue of code enforcement, weed, litter, or building demolition assessments it had levied on the properties. INA alleged that the City's interests were junior and inferior to INA's interests. The complaints sought to have the balance due on the tax sale certificates determined and decreed to be liens upon the real estate, together with attorney fees and costs. INA prayed that if the balances due were not paid within 20 days, each property be sold to satisfy the debt.

The City filed an answer in each case denying that its interests were junior or inferior to that of INA. In each case, INA filed a motion for default judgment or summary judgment, and in each case, the motion was sustained. However, the eight cases had been assigned to seven different judges of the district court, and different results were reached with respect to INA's tax liens and the City's special assessment liens.

In three cases, the court determined that the City's special assessment liens were perpetual and that the buyer at any sale would receive a deed only upon payment of subsequent taxes *and* all the special assessments upon the property. In each of those cases, INA appealed. In the other five cases, the court determined that the City's special assessment liens were junior to INA's interests. In those cases, should the proceeds of the sale be insufficient to satisfy all the outstanding liens, the City's special assessment liens would be extinguished. In those cases, the City appealed.

All eight cases were consolidated on appeal. The Nebraska Court of Appeals ordered that in the consolidated appeals, INA would be treated as the appellant and the City would be treated as the appellee and cross-appellant. We then moved the appeals

to our docket on our own motion pursuant to our authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

INA assigns that the district court erred when it determined that (1) the City's lien for special assessments takes priority over INA's lien for general real estate taxes by virtue of a tax sale certificate and (2) if the proceeds from the sheriff's sale are insufficient to cover all special assessment liens, the liens would not be extinguished. The City, as cross-appellant, assigns that the court erred when it determined that the lien of the City by virtue of a special assessment would be extinguished if the proceeds of the sheriff's sale were insufficient to pay the entire balance due.

## STANDARD OF REVIEW

The meaning of a statute is a question of law, and a reviewing court is obligated to reach conclusions independent of the determination made by the court below. *Harris v. Omaha Housing Auth.*, 269 Neb. 981, 698 N.W.2d 58 (2005).

## ANALYSIS

Although INA's first assignment of error takes issue with the district court's determinations that the City's special assessment liens had priority over the general tax lien represented by the tax sale certificate, the issue actually presented by this assignment of error seems to be the same as the issue presented by INA's second assignment of error. We do not read any of the district court's orders as directing that the proceeds of any sale should be used to satisfy the City's liens before the general tax liens are satisfied, and the City conceded at oral argument before this court that the proceeds of any sales must first be applied to the general tax liens. Rather, it appears from the record and the briefs that INA's assignments of error on appeal, and the City's assignment of error on cross-appeal, present a single legal issue: whether the City's special assessment liens are extinguished by the sheriff's sale if the proceeds of the sale are insufficient to satisfy all the liens on the property, or whether the City's special assessment liens remain attached to the property.

■ There can be, in fact, no question that under the statutory framework set forth above, general taxes are a first lien upon the real estate upon which they are levied, and that special assessment liens are subject to general tax liens. See, e.g., Neb. Rev. Stat. § 14-557 (Reissue 1997); § 77-1917.01; *Dent v. City of North Platte*, 148 Neb. 718, 28 N.W.2d 562 (1947). It was based upon this logic that we held in *Polenz v. City of Ravenna*, 145 Neb. 845, 18 N.W.2d 510 (1945), that property sold at a tax foreclosure to satisfy the lien of general taxes cannot be sold subject to the lien of special assessments, and title passes to a purchaser by such a sale free and clear of all such liens.

The City argues that *Polenz* is distinguishable because the foreclosing party in that case had been a governmental subdivision and the foreclosing party in these cases is a private party holding a tax sale certificate. The City cites § 77-1916, which provides in relevant part:

> If a surplus remains after satisfying all costs and taxes against any particular item of real property, the excess shall be applied in the manner provided by law for the disposition of the surplus in the foreclosure of mortgages on real property. *If the proceeds are insufficient to pay the costs and all the taxes, when the plaintiff is a governmental subdivision, a municipal corporation, or a drainage or irrigation district, the amount remaining shall be prorated among the governmental subdivisions, municipal corporations, and drainage or irrigation districts in the proportion of their interest in the decree of foreclosure.*

(Emphasis supplied.) Thus, the City argues that in *Polenz, supra,* the liens were extinguished because the foreclosing party, Buffalo County, was obliged to prorate the remaining funds to satisfy the special assessments that were outstanding.

■ We do not accept the City's argument. First, § 77-1916 is simply an expression of the principle that a county purchasing and foreclosing a tax sale certificate on real estate does so as trustee for the use and benefit of the state and all other governmental subdivisions entitled to participate in the distribution of the proceeds. See, *County of Madison v. Walz*, 144 Neb. 677, 14 N.W.2d 319 (1944); *City of Grand Island v. Willis*, 142 Neb. 686, 7 N.W.2d 457 (1943). The statute explains how insufficient

proceeds should be distributed, but does not support the conclusion that special assessment liens are extinguished only when the plaintiff is a governmental subdivision. Simply put, the City reads too much into § 77-1916.

But more significantly, the City overlooks the reasoning we applied in *Polenz, supra*, which is equally applicable whether or not the plaintiff is a governmental subdivision. We explained that when property is sold at a tax foreclosure to satisfy a lien of general taxes, it passes free and clear of special assessment liens because that is necessary in order for general taxes to remain a first lien.

> In the very nature of things a sale under a foreclosure of a first lien cannot be made subject to any other lien, for to do so would be to make the junior lien a senior lien. It would destroy the very purpose of the legislative provisions making general taxes a first lien. They are made a first lien in order that the funds which support the general functions of government may be secured. The lien for general taxes can only be realized by the sale of the property. If the special assessments remain a lien against the land, after sale to satisfy the paramount lien, then it is obvious that the sale value of the property is reduced by the amount of the junior lien. Such a result was not intended. If the special assessments remain a lien after title passes under the foreclosure proceedings, the result would be that the junior lien could then come forward and destroy the title based on the superior lien. Such a result would nullify the very purpose of the tax foreclosure laws.

> To make the first lien of general taxes fully effective, the title must pass, as the legislature declares it shall pass, free and clear of all other liens. Anything short of that would nullify the purposes of the law and the foreclosure proceedings.

*Polenz v. City of Ravenna*, 145 Neb. 845, 849-50, 18 N.W.2d 510, 512 (1945). See, also, e.g., *City Real Estate v. Sullivan*, 116 Colo. 169, 180 P.2d 504 (1947); *County Com'rs. v. Drainage Dist.*, 56 Wyo. 260, 108 P.2d 590 (1940); *Western Beverage Co. v. Hansen et ux.*, 98 Utah 332, 96 P.2d 1105 (1939); *Means v. Incorporated City of Boone*, 214 Iowa 948, 241 N.W. 671 (1932).

■ In *Polenz, supra*, we further noted the well-established principle that the title conveyed under a tax sale is not derivative, but is a new title in the nature of an independent grant by the sovereign authority, and the purchaser takes free from any encumbrances, claims, or equities connected with the prior title. See, *Dent v. City of North Platte*, 148 Neb. 718, 28 N.W.2d 562 (1947); *Polenz, supra*; *Coffin v. Old Line Life Ins. Co.*, 138 Neb. 857, 295 N.W. 884 (1941). This is why tax sale proceedings operate as a release of real property from liens and taxes included therein, and the sheriff's deed passes title "to the purchaser free and clear *of all liens of every nature whatsoever* and the interest or interests of all persons over whom the court had jurisdiction." (Emphasis supplied.) § 77-1914. See, also, *City Real Estate, supra*; *Western Beverage Co., supra*; *Means, supra*.

In short, contrary to the City's suggestion, our holding in *Polenz, supra*, was not premised upon the fact that the plaintiff was a governmental subdivision. Rather, it was based on the nature of a tax foreclosure proceeding and dictated by our determination that it was necessary for the special assessment liens to be extinguished in order for the priority of the general tax liens to be vindicated. The distinction urged by the City is simply not a meaningful one.

■ The City also relies upon § 14-557, which provides, in relevant part, that general municipal liens are a first lien upon real estate, and that "[a]ll special assessments regularly levied shall be a perpetual lien on the real estate assessed from the date of levy until paid irrespective of the county in which such real estate is situated, but shall be subject to all general taxes." However, a "perpetual lien" is not intended to continue delinquent taxes in force against real estate after a statute has barred a right of action. *D'Gette v. Sheldon*, 27 Neb. 829, 44 N.W. 30 (1889). Accord, *Spiech v. Tierney*, 56 Neb. 514, 76 N.W. 1090 (1898); *Alexander v. Shaffer*, 38 Neb. 812, 57 N.W. 541 (1894).

■ Rather, the word "perpetual" was used in the sense that "[t]he lien conferred by the statute is fixed upon the land itself and is primary, overriding all other liens, since a sale thereunder if duly made would extinguish all other claims . . . ." *D'Gette*, 27 Neb. at 836, 44 N.W. at 32. Real estate can still be discharged from a perpetual lien by payment, sale for taxes, or the neglect of

the purchaser to foreclose the lien until after the statute of limitations has run. *Spiech, supra.* See, also, e.g., *Forman Realty Corp. v. Brenza*, 11 Ill. 2d 531, 144 N.E.2d 623 (1957); *City Real Estate v. Sullivan*, 116 Colo. 169, 180 P.2d 504 (1947); *City of Albuquerque v. Middle Rio Grande Conservancy Dist.*, 45 N.M. 313, 115 P.2d 66 (1941); *County Com'rs. v. Drainage Dist.*, 56 Wyo. 260, 108 P.2d 590 (1940); *State v. Day County*, 64 S.D. 370, 266 N.W. 726 (1936). Compare Neb. Rev. Stat. § 46-555 (Reissue 2004) (expressly providing that taxes and assessments levied by water reclamation districts constitute perpetual lien "and no sale of such property to enforce any general, state, county, city, village or school tax or other liens, shall extinguish the perpetual lien of such taxes and assessments").

Finally, the City contends that a purchaser at a tax foreclosure sale must pay subsequent taxes and special assessments prior to delivery of a sheriff's deed, pursuant to § 77-1913, which requires a purchaser to pay "subsequent taxes levied and assessed against the property." In contrast, INA argues that the "subsequent taxes" that must be paid pursuant to § 77-1913 are general taxes, and do not include special assessments. But we have no occasion, in these cases, to consider whether "subsequent taxes" within the meaning of § 77-1913 include special assessments, although that conclusion could certainly be drawn from § 77-1858, which provides in part that "[a]ll provisions of the revenue law now in force with reference to the collection of taxes shall apply with equal force to all taxes and special assessments levied by such county, municipality, drainage district, or other political subdivision of the state." In these cases, the City's special assessments cannot be "subsequent taxes," because they are not "subsequent" within the meaning of § 77-1913.

 The special assessments at issue here were levied after the sale of the tax certificates, but prior to commencement of the foreclosure proceedings. Tax liens arising subsequent to the sale of a tax certificate, but prior to the commencement of the foreclosure proceeding, are included in the foreclosure decree and satisfied by the proceeds of the sheriff's sale. See § 77-1902. Thus, the subsequent taxes that a purchaser at a sheriff's sale in the foreclosure of a tax certificate is required to pay before confirmation of the sale are limited to those levied and assessed

on the property "under foreclosure," i.e., taxes assessed and levied after commencement of the foreclosure proceeding. See, § 77-1913; *Douglas County v. Village of Ralston*, 133 Neb. 834, 277 N.W. 341 (1938). "Subsequent taxes" within the meaning of § 77-1913 do not include taxes, whether general taxes or special assessments, that were assessed and levied prior to the commencement of the foreclosure proceeding.

## CONCLUSION

In five of these consolidated cases, the district court correctly concluded that the City's special assessment liens were secondary to the general lien represented by the tax certificate and that the special assessment liens would be extinguished by foreclosure and sheriff's sale, regardless of whether the proceeds of the sale were sufficient to pay the special assessments. The court's orders in those cases are affirmed. In the remaining three cases, the court incorrectly concluded that the special assessment liens would remain attached to the property after foreclosure and sale. In those cases, the court's orders are reversed, and the causes remanded for further proceedings consistent with this opinion.

JUDGMENTS IN NOS. S-05-268, S-05-348, S-05-414, S-05-415, AND S-05-650 AFFIRMED.

JUDGMENTS IN NOS. S-05-231, S-05-338, AND S-05-421 REVERSED, AND CAUSES REMANDED FOR FURTHER PROCEEDINGS.

WRIGHT, J., participating on briefs.