OTTACO ACCEPTANCE, INC., A MICHIGAN CORPORATION, APPELLEE, V. TERESA G. LARKIN ET AL., APPELLEES, AND SIGMA INVESTMENTS, INC., APPELLANT.

733 N.W.2d 539

June 22, 2007. No. S-05-854.

Thomas J. Young for appellant.

Robert S. Lannin and Patrick M. Driver, of Shively Law Offices, P.C., L.L.O., for appellee Ottaco Acceptance, Inc.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## I. NATURE OF CASE

Sigma Investments, Inc. (Sigma), appeals from a judgment entered against it by the Douglas County District Court. Ottaco Acceptance, Inc. (Ottaco), sought to quiet title to real property located in Omaha, Nebraska, claiming that it was the owner of the property by virtue of a treasurer's tax deed. Sigma, which was issued a trustee's deed on the property, claimed title adverse to Ottaco's title. Sigma argued that its lien on the property was not extinguished by the issuance of Ottaco's tax deed and that Ottaco's tax deed was void or voidable. The district court found that Ottaco's tax deed was not void and that Sigma failed to prove it had redeemed the property.

## II. BACKGROUND

### 1. STATUTORY FRAMEWORK

This case involves the "certificate method" for handling delinquent real estate taxes. Under the certificate method, when a county treasurer sells real property for delinquent taxes under chapter 77, article 18, of the Nebraska Revised Statutes, the purchaser receives a certificate commonly known as a "tax certificate" or "tax sale certificate." This certificate describes the property, the amount paid by the purchaser, and the date that

the purchaser will be entitled to a deed.[1] Tax certificates can be assigned by endorsement, and the assignee steps into the shoes of the purchaser.[2]

As we explained in *INA Group v. Young*,[3] the owner of the property can redeem the property before delivery of a deed by paying the treasurer the amount shown on the certificate and all subsequent taxes, along with the interest specified by Neb. Rev. Stat. § 45-104.01 (Reissue 2004). If the property is not redeemed, the owner of the certificate may proceed in one of two ways: The owner can wait and obtain a deed of conveyance for the property, commonly known as a tax deed, or can obtain an order of foreclosure and compel the sale of the property.[4] In this case, Ottaco followed the first course of action.

Under the first course of action, obtaining a tax deed, the holder of the certificate must wait 3 years from the date of the sale of the property. At any time within 6 months after the 3-year period expires, the treasurer can, upon request, issue a deed of conveyance to the holder of the certificate.[5] If the certificate holder waits longer than 3 years 6 months from the sale, the certificate ceases to be valid and the lien of taxes for which the property was sold is discharged.[6]

### 2. FACTUAL BACKGROUND

On March 3, 1997, Equifunding, Inc., was issued the tax certificate for the property in question by the Douglas County treasurer. Although the assignment of the tax certificate is not contained in the record, it is undisputed in the present appeal that Equifunding assigned the tax certificate to Ottaco. Pursuant to Neb. Rev. Stat. § 77-1831 (Reissue 2003), in April and May

---

[1] See, *INA Group v. Young*, 271 Neb. 956, 716 N.W.2d 733 (2006); *Ottaco Acceptance, Inc. v. Huntzinger*, 268 Neb. 258, 682 N.W.2d 232 (2004).

[2] *INA Group v. Young, supra* note 1.

[3] *Id.*

[4] *Id.*

[5] *Id.* See Neb. Rev. Stat. § 77-1837 (Reissue 1996).

[6] *INA Group v. Young, supra* note 1. See Neb. Rev. Stat. § 77-1856 (Reissue 2003).

2000, notice was personally served upon Martin Sylvester and Connie Sylvester, the tenants of the property. Notice was sent via certified mail on December 7, 1999, to Teresa Larkin, record title owner of the property; on January 3, 2000, to Industry Mortgage Company, L.P. (Industry Mortgage), a beneficiary under a trust deed issued on the property; and on January 3 to Steffi Swanson, trustee under the trust deed. In a letter dated August 25, 2000, Ottaco requested a tax deed for the property from the Douglas County treasurer. On September 5, the treasurer issued a tax deed to Ottaco. The deed states in pertinent part that the property in question was sold for nonpayment of taxes to Ottaco on March 3, 1997. The tax deed was recorded on September 7, 2000.

On August 29, 2000, Swanson, as trustee, sold the property to Sigma at a trustee's sale for $29,000 pursuant to the trust deed for breach and default under the terms of the deed. Sigma, as purchaser, was issued a trustee's deed on August 29, and the same was recorded on September 6. The record reflects that Kiely Sindelar, a shareholder of Sigma, had researched the property on the computerized Douglas County information system prior to Sigma's purchase of the property at the trustee's sale and knew the property was subject to a tax sale certificate for delinquent taxes.

On August 31, 2000, Ottaco filed a petition with the district court requesting (1) an accounting of the amount due under the tax certificate; (2) that its lien be adjudged a first lien; (3) that the property be sold for satisfaction of the lien; (4) that the rights of various defendants, including Larkin, the Sylvesters, Industry Mortgage, Swanson, and Sigma, be determined and found to be subsequent to Ottaco's; (5) that the defendants be foreclosed from redemption; and (6) that Ottaco recover its costs. Pursuant to a request by Sigma, the court, in July 2001, entered an order authorizing Sigma to make repairs to the property and authorizing the sale of the property. Sigma claims to have spent approximately $36,818.25 to repair the property which was then sold to a third party for $66,295.73. The proceeds of the sale were paid to the clerk of the district court to be held in a trust account. After the issuance and filing of its tax deed, Ottaco filed the operative petition, wherein Ottaco

requests that title to the property be quieted in its name and that all proceeds from the sale of the property be distributed to it.

Swanson disclaimed any interest in the property, and default judgment was entered against Larkin, Industry Mortgage, and the Sylvesters. Sigma is the only remaining defendant. In its answer, Sigma alleged that Ottaco's tax deed was void because Ottaco failed to provide Sigma with notice pursuant to § 77-1831 and because Ottaco failed to produce to the treasurer its tax certificate pursuant to § 77-1837. Sigma also alleged that Ottaco's tax deed represented a lien for the taxes paid, interest, attorney fees, and costs. Sigma claimed that it was entitled to reimbursement for the $29,000 it purchased the property for at the trustee's sale and the $36,818.25 it expended for repairs, because (1) Ottaco did not notify it of Ottaco's intent to seek a tax deed; (2) Ottaco's interest in the tax deed is a lien interest in the property; (3) Sigma's interest, in the property is derivative of Industry Mortgage's interest, and Sigma's interest should be considered superior; and (4) it would be unjust and unfair for Ottaco to benefit at Sigma's expense. Sigma also counterclaimed, alleging unjust enrichment on the part of Ottaco for the amount expended by Sigma, and cross-claimed against Industry Mortgage and Swanson. Sigma's cross-claim is not at issue in this case.

On June 2, 2004, the district court held a bifurcated trial on what it described as the issue of the validity of Ottaco's tax deed. Evidence adduced at trial included the testimony of Sindelar. Sindelar testified that on August 29, 2000, he mailed a check in the amount of $6,491.35 to the Douglas County treasurer's office to redeem the property, but that the check was never cashed. Aside from Sindelar's testimony and copies of Sindelar's August and September 2000 bank statements, no other evidence was submitted to the court evidencing Sindelar's attempted redemption of the property. Sindelar also testified that in April 2004, he again tendered payment for taxes on the property to the treasurer's office, but that the treasurer's office returned his check to him with a letter stating the taxes had been paid.

On February 16, 2005, the district court entered an order in favor of Ottaco. In response to an assertion by Ottaco that Sigma failed to meet its burden of proof to raise its challenges to Ottaco's tax deed, the court found that under Neb. Rev. Stat.

§ 77-1843 (Reissue 2003), Sigma was required to prove that it had properly redeemed the property. The court found that Sigma failed to meet its burden under § 77-1843 and, therefore, could not defeat Ottaco's tax deed. The court further found that even assuming that Sigma did meet its burden to prove that the property was properly redeemed, Sigma had not proved that Ottaco's deed was invalid. Sigma had argued to the court that Ottaco's deed was invalid because Larkin had not been personally served notice, Sigma had not been served notice prior to Ottaco's application for the tax deed, Ottaco failed to produce the tax certificate to the county treasurer, the tax deed lacks a legible seal, and the deed does not accurately identify Equifunding as the original purchaser. The district court also found that Sigma's allegation that Ottaco's interest in the property is limited to a lien interest is without merit because Nebraska law provides that a deed creates in the holder a more significant interest than a lien. With regard to Sigma's claim for reimbursement for repairs and maintenance on the property, the court found that Sigma had previously been reimbursed for $10,000. Finally, with regard to Sigma's claim for reimbursement for the purchase price paid for the property, the court found that Sigma failed to identify any viable basis for a claim that Ottaco should somehow repay Sigma for an amount paid to third-party defendant, Industry Mortgage. The court found that because Ottaco received no benefit from the purchase price, Sigma was not entitled to recover any of that amount from Ottaco. The district court then ordered that title be quieted in Ottaco in fee simple absolute. At this juncture, we point out that the district court's determinations as to Sigma's claims for reimbursement for repairs and maintenance on the property and the purchase price paid for the property have not been assigned as error by Sigma in the matter presently before this court.

On June 20, 2005, the district court entered an order of final judgment in favor of Ottaco and against Sigma pursuant to Neb. Rev. Stat. §§ 25-1315 (Cum. Supp. 2006) and 25-1902 (Reissue 1995).

### III. ASSIGNMENTS OF ERROR

Sigma's assignments of error, consolidated, restated, and renumbered for our review, are that the district court erred in

(1) failing to determine that treasurer's tax deeds only convey title and do not extinguish lien interests; (2) determining that Sigma was required to comply with § 77-1843 and Neb. Rev. Stat. § 77-1844 (Reissue 2003); (3) failing to determine that the tax deed issued to Ottaco was void or voidable; (4) not determining that the treasurer's tax deed issued to Ottaco, as it related to Sigma, only represented a lien for taxes, interest, attorney fees, and costs; (5) failing to determine Sigma's interest was derivative of Industry Mortgage and was not extinguished by the treasurer's tax deed issued in Ottaco's favor; and (6) failing to determine that a purchaser at a trust deed liquidation of a mortgage, which occurs within the last 3 months during which a tax sale certificate holder could request a treasurer's tax deed, retains the lien interest of the mortgage.

## IV. STANDARD OF REVIEW

A quiet title action sounds in equity.[7] In an appeal of an equitable action, an appellate court tries factual questions de novo on the record, provided that where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[8]

Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below.[9]

## V. ANALYSIS

### 1. DOES OTTACO'S TAX DEED, AS IT RELATES TO SIGMA, ONLY REPRESENT LIEN FOR TAXES, INTEREST, ATTORNEY FEES, AND COSTS?

Sigma first contends that Ottaco's tax deed merely represented a lien on the property. Section 77-1837 provides that during the 6 months after the expiration of 3 years from the date

---

[7] *Ottaco Acceptance, Inc. v. Huntzinger, supra* note 1.

[8] *Id.*

[9] *Zach v. Eacker*, 271 Neb. 868, 716 N.W.2d 437 (2006).

of the tax sale, the treasurer shall, upon the production of the tax sale certificate, execute and deliver to the purchaser or his or her heirs or assigns a deed of conveyance for the real property de scribed in the tax certificate if the property has not been redeemed. "Conveyance" has been defined by Black's Law Dictionary[10] as "[t]he voluntary transfer of a right or of property," as well as "[t]he transfer of an interest in real property from one living person to another, by means of an instrument such as a deed."

Considering what we described in *Strunk v. Chromy-Strunk*[11] as the "well-understood legal meaning of the term 'convey,'" it is clear that a tax deed conveys title to the property in question, and not merely a lien interest in the property. We, therefore, conclude that the tax deed conveyed title to Ottaco and not merely a lien interest in the property.

## 2. WAS SIGMA OBLIGATED TO COMPLY WITH §§ 77-1843 AND 77-1844?

■ Sigma next contends that it was not required to comply with §§ 77-1843 and 77-1844 because Ottaco's tax deed was void or voidable. We disagree. Section 77-1843 sets forth those conditions precedent a party seeking to *defeat* title conveyed under a treasurer's deed must prove. Section 77-1844 sets forth those conditions precedent a party seeking to *question* title conveyed under a treasurer's deed must prove. Statutory language is to be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[12] It is clear from the language of §§ 77-1843 and 77-1844 that even if title under a tax deed is void or voidable, the conditions precedent set forth in those statutes must be met in order to first question and then defeat title. As we explain more fully below, Sigma's contentions that Ottaco's tax deed is void or voidable are without merit. However, even assuming that Ottaco's tax

---

[10] Black's Law Dictionary 357-58 (8th ed. 2004).

[11] *Strunk v. Chromy-Strunk*, 270 Neb. 917, 941, 708 N.W.2d 821, 841 (2006).

[12] *Turco v. Schuning*, 271 Neb. 770, 716 N.W.2d 415 (2006).

deed was void or voidable, Sigma was required to show that it satisfied the conditions precedent in §§ 77-1843 and 77-1844. We now address whether Sigma has satisfied the requirements of those statutes.

Because title must be questioned before it may be defeated, we first address § 77-1844. Before doing so, we point out that the district court did not address whether Sigma was required to comply with § 77-1844. However, before a court can exercise jurisdiction, a party must have standing, and either a party or the court can raise a question of standing at any time during the proceeding.[13] In order to have standing to invoke a tribunal's jurisdiction, one must have some legal or equitable right, title, or interest in the subject of the controversy.[14]

Section § 77-1844 provides:

No person shall be permitted to question the title acquired by a treasurer's deed without first showing that he, or the person under whom he claims title, had title to the property at the time of the sale, or that the title was obtained from the United States or this state after the sale, and that all taxes due upon the property had been paid by such person or the persons under whom he claims title as aforesaid.

Larkin, the titleholder to the property at the time of the tax certificate sale, defaulted under the terms of a trust deed which named Swanson as trustee and Industry Mortgage as beneficiary. As a result of Larkin's default, the property was sold at a trustee's sale by Swanson and title was transferred by trustee's deed to Sigma. Sigma's trustee's deed was recorded on September 6, 2000, 1 day before Ottaco's tax deed was recorded. Sigma, as the grantee under the trustee's deed, obtained title to the property. We conclude, therefore, that for purposes of § 77-1844, Sigma stands in the shoes of Larkin and that Sigma has satisfied the title requirement of § 77-1844.

[13] *In re Application of Metropolitan Util. Dist.*, 270 Neb. 494, 704 N.W.2d 237 (2005).

[14] *Spring Valley IV Joint Venture v. Nebraska State Bank*, 269 Neb. 82, 690 N.W.2d 778 (2005).

In *Ottaco Acceptance, Inc. v. Huntzinger*,[15] and before that, in *Cornell v. Maverick Loan & Trust Co.*,[16] we explained that "'[t]he "showing" of taxes paid is at the trial, and if all taxes are paid before or during the trial, or before final judgment, that is enough. The "showing" is made by the evidence, and not by the pleadings alone.'" We have held, however, that the tender of payment of taxes to the treasurer is sufficient to lay foundation for the institution of a suit to redeem property from a tax sale.[17] The evidence presented at trial showed that Sigma tendered payment in the amount of $7,458.09 to the county treasurer, but that Sigma's payment was rejected. This evidence is sufficient under § 77-1844. Because Sigma has satisfied both requirements of § 77-1844, Sigma may question Ottaco's title.

We next turn to the determination of whether Sigma may defeat Ottaco's title. Section 77-1843 enumerates the conditions precedent to defeat title "[i]n all controversies and suits involving the title to real property claimed and held under and by virtue of a deed made substantially by the treasurer in the manner provided by sections 77-1831 to 77-1842 . . . ." Sigma contends that Ottaco's tax deed is void for the following reasons: (1) Ottaco failed to personally serve notice to the record titleholder, (2) Ottaco failed to submit the original tax sale certificate to the treasurer, (3) the tax deed fails to identify the original purchaser, and (4) the tax deed lacks a legible treasurer's seal. As we read it, these assertions also go to whether Ottaco's tax deed was made "substantially by the treasurer in the manner provided by sections 77-1831 to 77-1842." Accordingly, before we address whether Sigma may defeat Ottaco's title under § 77-1843, we must determine whether Ottaco's tax deed substantially complies with the aforesaid sections.

---

[15] *Ottaco Acceptance, Inc. v. Huntzinger, supra* note 1, 268 Neb. at 262, 682 N.W.2d at 236 (emphasis omitted).

[16] *Cornell v. Maverick Loan & Trust Co.*, 95 Neb. 842, 147 N.W. 697 (1914).

[17] *Brokaw v. Cottrell*, 114 Neb. 858, 211 N.W. 184 (1926).

### (a) Ottaco's Failure to Personally Serve Notice to Record Titleholder

Sigma first argues that Ottaco failed to personally serve notice on Larkin pursuant to § 77-1831, Neb. Rev. Stat. § 77-1832 (Reissue 1996), and article VIII, § 3, of the Nebraska Constitution.

"In order to have standing, a litigant must assert the litigant's own legal rights and interests and cannot rest his or her claim on the legal rights or interests of third parties."[18] In *In re Petition of SID No. 1*, objectors to the formation of a sanitary and improvement district argued that the district court lacked personal jurisdiction over proceedings to form the sanitary and improvement district because service was not properly served on individuals who were not objectors. We held that the objectors could not assert a claim based on defective service to other parties.

Here, Sigma does not assert on appeal that service of process on it was defective. Rather, it asserts that service on Larkin was defective. Because Sigma cannot assert a claim based on improper service to another party, we do not address Sigma's claim.

### (b) Ottaco's Failure to Submit Original Tax Certificate

Sigma next argues that Ottaco failed to submit the original tax certificate to the treasurer as required by § 77-1837. Section 77-1837 provided in part that if real property has not been redeemed, "the county treasurer, on request, on production of the certificate of purchase, and upon compliance with the provisions of sections 77-1801 to 77-1837, shall execute and deliver to the purchaser . . . a deed of conveyance for the real estate described in such certificate." As early as 1884, this court stated that the presentation of the tax certificate is a condition precedent to the execution of the tax deed and unless a tax certificate is presented to the county treasurer, the treasurer has

---

[18] *In re Petition of SID No. 1*, 270 Neb. 856, 861, 708 N.W.2d 809, 815 (2006).

no authority to execute a tax deed.[19] "In other words, the law makes the return of the certificate the evidence upon which the treasurer has authority to act."[20]

In this case, Ottaco did not return the original tax certificate to the treasurer because the original tax certificate was already in the treasurer's possession. Instead, Ottaco presented the treasurer with a copy of the tax certificate. As indicated by this court in *Thompson v. Merriam*,[21] the presented tax certificate is the evidence upon which the treasurer has authority to issue a tax deed. Where the original tax certificate is in the possession of the treasurer, we conclude that the holder of the certificate is not obligated to undertake the formalistic procedure of requesting the return of the original tax certificate only to "present" the tax certificate back to the treasurer.

(c) Tax Deed's Failure to Identify Original Purchaser

Neb. Rev. Stat. § 77-1839 (Reissue 2003) provides that the conveyance by a tax deed shall be substantially in the form set forth in that statute. Among other things, the form in § 77-1839 identifies to whom the property was sold at the tax sale.

Sigma asserts that Ottaco's deed incorrectly identifies Ottaco as the purchaser of the property in question on March 3, 1997. In fact, Equifunding was the purchaser of the property on that date and later assigned its interest in the property to Ottaco.

 In the construction of a deed, courts will give effect to the intent of the parties.[22] A mistake, even though a material one, does not render a deed void, but at most, voidable in equity.[23] Where it appears that a mistake has been made, a court will order the cancellation or the reformation of a deed.[24]

---

[19] See *Thompson v. Merriam*, 15 Neb. 498, 20 N.W. 24 (1884).

[20] *Id.* at 499, 20 N.W. at 25.

[21] *Id.*

[22] *Anson v. Murphy*, 149 Neb. 716, 32 N.W.2d 271 (1948).

[23] 23 Am. Jur. 2d *Deeds* § 184 (2002). See, also, *Woodring v. Swieter*, 180 N.C. App. 362, 637 S.E.2d 269 (2006).

[24] 23 Am. Jur. 2d, *supra* note 23.

The cancellation of a deed is permissible when there exists a mutual mistake between the parties to the conveyance. In order to be entitled to a decree rescinding a deed on the grounds of mutual mistake, it must appear that the mistake was such that, if the true facts had been known, the deed would not have been executed . . . . Reformation is the appropriate remedy when a deed is not drafted in conformity with the parties' intentions and is marred by mistake which becomes mutual when the deed is executed and accepted by the parties.[25]

Ottaco's tax deed misidentifies Ottaco as the purchaser of the property at the March 3, 1997, sale. There is no indication in the record that either Ottaco or the treasurer was unaware that Equifunding was the original purchaser at the tax sale or that the tax deed would not have been executed had Equifunding been properly identified. At most, the misidentification of Ottaco as the purchaser at the tax sale necessitates reformation of the tax deed. We, therefore, conclude that notwithstanding the tax deed's misidentification of Ottaco as the purchaser of the property at the tax sale, the tax deed is made in compliance with § 77-1839.

### (d) Lack of Legible Treasurer's Seal on Tax Deed

Finally, Sigma argues that Ottaco's tax deed lacks a legible treasurer's seal as required by Neb. Rev. Stat. § 77-1857 (Reissue 2003). Section 77-1857 provides that the county treasurer shall affix an impression or representation of its official seal to every tax sale certificate and tax deed made by him or her. This official seal is called for in the form set forth in § 77-1839.

Sections 77-1839 and 77-1857 merely require that the treasurer's seal be affixed. They do not require that the treasurer's seal be entirely legible. Because it is not within the province of this court to read a meaning into the statute which is not there,[26] we conclude that Ottaco's tax deed is substantially in compliance with § 77-1839.

---

[25] *Id.* at 197-98.

[26] See *KN Energy v. Village of Ansley*, 266 Neb. 164, 663 N.W.2d 119 (2003).

Because we have determined that Sigma's contentions are without merit, we find that Ottaco's tax deed was made substantially in the manner provided by Neb. Rev. Stat. §§ 77-1831 to 77-1842 (Reissue 1996). We now turn to the question of whether Sigma may defeat Ottaco's title under § 77-1843.

Section 77-1843 provides that in order to defeat title under a tax deed,

> the person claiming the title adverse to the title conveyed by such deed shall be required to prove, in order to defeat the title, either (1) that the real property was not subject to taxation for the years or year named in the deed; (2) that the taxes had been paid before the sale; (3) that the property has been redeemed from the sale . . . and that such redemption was had or made for the use and benefit of persons having the right of redemption under the laws of this state; or (4) that there had been an entire omission to list or assess the property, or to levy the taxes, or to sell the property.

Sigma does not argue, nor has it presented any evidence, that any of the four conditions in § 77-1843 have been satisfied. Because Sigma has not satisfied the requirements of § 77-1843, we conclude that Sigma cannot defeat Ottaco's title.

### 3. Remaining Assignments of Error

In its three remaining assignments of error, Sigma argues that the district court erred in (1) failing to determine that tax deeds only convey title and do not extinguish lien interests, (2) failing to determine Sigma's interest was derivative of Industry Mortgage and was not extinguished by the treasurer's tax deed issued in Ottaco's favor, and (3) failing to determine that a purchaser at a trust deed liquidation of a mortgage, which occurs within the last 3 months during which a tax sale certificate holder could request a treasurer's tax deed, retains the lien interest of the mortgage. The bifurcated trial was held only on the issue of the validity of Ottaco's tax deed. Accordingly, these claims were not passed upon by the district court. We, therefore, do not reach these assignments of error.

## VI. CONCLUSION

For the reasons discussed above, we affirm the decision of the district court.

AFFIRMED.